918 F.2d 1446
 1991 A.M.C. 678
 CONTACT LUMBER COMPANY, a corporation; Russell Stadelman &
Company, a corporation; General Hardwood Company, a
corporation; Rainier Imports, Inc., a corporation; Swaner
Hardwood Co., Inc., a corporation, Plaintiffs-Appellants,
v.
P.T. MOGES SHIPPING COMPANY, LTD., a foreign corporation,
Defendant-Appellee.
The PENROD COMPANY, a corporation; Conwood Products, Inc.,
a corporation; Greenwood Forest Products Inc., a
corporation; Robert S. Osgood Inc., a corporation; Bateman
Bros. Lumber Co., a corporation; Insular Lumber Sales, a
corporation, Plaintiffs-Appellants,
v.
P.T. MOGES SHIPPING COMPANY, LTD., a foreign corporation,
Defendant-Appellee.
 Nos. 89-15774, 89-16220, 89-15775 and 89-16221.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 1, 1990.
Decided Nov. 16, 1990.
 
 Ernest N. Reddick, Derby, Cook, Quinby, & Tweedt, San Francisco, Cal., for plaintiffs-appellants.
 Eric Danoff, Graham & James, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, Chief Judge, BROWNING and RYMER, Circuit Judges.
 GOODWIN, Chief Judge:
 
 
 1
 Plaintiffs purchased negotiable bills of lading representing Philippine mahogany lumber to be delivered in Oakland, California. The lumber was damaged at sea in the hands of an intermediate carrier and plaintiffs sued the Indonesian corporation that issued the bills of lading. The district court dismissed the action on the ground of forum non conveniens. We affirm.
 
 
 2
 While proceeding between ports in the Philippines, the Philippine cargo vessel ISABELITA listed and then grounded. Her cargo of lumber products suffered significant loss and damage. Although much of the recovered cargo was in poor condition, a portion was sold in Cebu City, Philippines at public auction. The proceeds are currently in a trust account in a Manila bank in the joint names of the cargo surveyors. After purchasing the bills of lading, appellants learned of the casualty and filed suit against Moges to recover their losses.
 
 
 3
 Moges, an ocean carrier that owns and charters merchant cargo vessels, has no offices or employees in the United States, and it transacts business with U.S. entities through the use of agents.
 
 
 4
 Appellants claim to be U.S. corporations and the trial court assumed them to be U.S. entities.
 
 
 5
 Contact Lumber alleged damages in the amount of $508,141.32. The claim was brought under the United States Carriage of Goods by Sea Act ("U.S. COGSA"), 46 U.S.C.App. Sec. 1300 et seq., and Federal Rule of Civil Procedure 9(h) (governing admiralty and maritime pleadings). The bill of lading incorporates U.S. COGSA.
 
 
 6
 Moges denied liability and asserted a compulsory counterclaim for unpaid freight costs. Among other defenses, Moges filed a motion to dismiss on the ground of forum non conveniens.[1]
 
 
 7
 The Penrod Company filed a parallel action against Moges alleging damages in the amount of $701,252.36 on behalf of owners of cargo lost or damaged aboard the ISABELITA who were not named in the Contact Lumber action.
 
 
 8
 Shortly after these proceedings commenced before the district court, a number of lawsuits arising from the same casualty were filed in the Philippine courts. Moges brought an indemnity suit in Manila against Philippine Transmarine Carriers, Inc. ("PTC"), the owner and operator of the ISABELITA, seeking reimbursement for all losses arising from the grounding of the ISABELITA, including damages Moges may have to pay appellants.
 
 
 9
 PTC, in turn, has filed general average claims in Manila against the cargo owners for a share of its overall loss resulting from the casualty. The fund in the Manila bank is being held as security for these claims.
 
 
 10
 United Salvage and Towage Inc., a Philippine corporation based in Manila, has filed suit in Manila against the ISABELITA, its cargo, and the salvage proceeds for unsettled claims arising out of its salvage activities.
 
 
 11
 Against this backdrop of litigation, the district court issued its consolidated Memorandum and Order granting appellee's motion to dismiss on the ground of forum non conveniens. The court's dismissal was subject to three conditions: first, that Moges consent to the jurisdiction of the Philippine court; second, that Moges waive any statute of limitations defense that would not have been available had the court retained jurisdiction; and third, that Moges issue a letter of guaranty that a Philippine judgment, if rendered, will be satisfied.
 
 I. Forum Non Conveniens
 
 12
 Appellants and appellee offer competing views concerning how this litigation ought to be characterized. Appellants argue the court must focus on whether the bills of lading issued by Moges contained false information upon which U.S. purchasers of cargo relied to their detriment. They maintain that their case turns on the rights and duties set forth in the Moges bills of lading, that COGSA requires interpretation of these documents under U.S. law, and that the evidence (i.e., the bill of lading) upon which the court's decision would rest is located in the United States.
 
 
 13
 Moges, on the other hand, emphasizes that the principal issue is the assignment of fault in the listing and grounding of the ISABELITA. Because all of the evidence and parties that can best explain the casualty are located in the Philippines, Moges argues that Manila is a more appropriate forum in which to litigate this dispute.
 
 
 14
 "The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 511-12, 67 S.Ct. 839, 844-45, 91 L.Ed. 1055 (1947)); see also Zipfel v. Halliburton, 832 F.2d 1477, 1481-82 (9th Cir.1987), cert. denied, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988).
 
 
 15
 Although this circuit has not articulated a dispositive test to govern forum non conveniens dismissal, the Gulf Oil Court suggested that both "private" and "public" factors must be analyzed in deciding whether a case should be heard in an alternative forum. This forum non conveniens analysis applies with equal force in the context of admiralty and maritime jurisdiction. As the Second Circuit observed: "[I]t is in the field of admiralty that our federal courts have applied the doctrine of forum non conveniens most flexibly and over the longest period of time." Alcoa S.S. Co., Inc. v. M/V Nordic Regent, 654 F.2d 147, 153 (2d Cir.) (en banc), cert. denied, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1981).
 
 
 16
 In a motion to dismiss on the ground of forum non conveniens, "the burden of proving an alternative forum is the defendant's and ... the remedy must be clear before the case will be dismissed." Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). Accordingly, appellee must prove the existence of an adequate alternative forum and that private and public interest factors favor dismissal. See Gulf Oil, 330 U.S. at 508-09, 67 S.Ct. at 843; Piper Aircraft, 454 U.S. at 247-52, 102 S.Ct. at 261-64. In carrying this burden, appellee must provide sufficient information to enable the district court to balance the parties' interests. If appellant, however, can demonstrate that choice of law requires retaining the case, the motion to dismiss will be denied. See Zipfel, 832 F.2d at 1486.
 
 
 17
 Courts have not agreed on whether U.S. plaintiffs are entitled to special deference in their selection of a U.S. forum. Appellants contend the district court erred in attaching little significance to their choice of forum. In support of their argument, they rely on Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843, which states: "But unless the balance [of private and public interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."
 
 
 18
 This Circuit has found that while a U.S. citizen has no absolute right to sue in a U.S. court, great deference is due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown. Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1335 (9th Cir.1984), cert. denied, 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985).
 
 
 19
 While the courts' language suggests that a U.S. citizen's decision to sue in the domestic forum creates a presumption of deference:
 
 
 20
 [a] citizen's forum choice should not be given dispositive weight.... [I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.
 
 
 21
 Piper Aircraft, 454 U.S. at 256 n. 23, 102 S.Ct. at 266 n. 23. As this Circuit has observed: "The presence of American plaintiffs, however, is not in and of itself sufficient to bar a district court from dismissing a case on the ground of forum non conveniens." Cheng, 708 F.2d at 1411 (following Alcoa, 654 F.2d 147, 154-58). Although "a defendant must meet an almost impossible burden in order to deny a citizen access to the courts of this country," Mizokami Bros. of Ariz., Inc. v. Baychem Corp., 556 F.2d 975, 977 (9th Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978), the cases demonstrate that defendants frequently rise to the challenge. In fact, the Mizokami Court upheld the lower court's dismissal on the ground of forum non conveniens.In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.
 
 
 22
 Id. at 978.
 
 1. Adequate Alternative Forum
 
 23
 "At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum." Piper Aircraft, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. This requirement is ordinarily satisfied when the defendant is amenable to process in the other jurisdiction. Id.
 
 
 24
 The district court granted appellee's motion to dismiss "on the express condition that it consent to the jurisdiction of the Philippine courts, and that it waive any defense of statute of limitations which would not have been available to it had the matter been heard in the United States District Court." Moges has agreed to submit to jurisdiction in the Philippines not only pursuant to the district court's order but also in pressing a claim against PTC in the Manila courts. Thus, conditional dismissal satisfies the legal standard set forth in Piper Aircraft and Gates Learjet.
 
 
 25
 In contesting the district court's ruling, appellants argue that litigation in the Philippines is time consuming and that collecting a judgment is problematic. Concerning the first claim, appellants present only limited support for their contention that litigation in the Philippines moves slowly. With respect to the second claim, the district court required Moges to issue a letter of guaranty that it would satisfy any judgment awarded plaintiffs by a Philippine court. Hence, appellants' fears that they will be unable to collect are unfounded. The moving party must demonstrate that an adequate alternative forum exists, Cheng, 708 F.2d at 1411, and Moges has carried this burden.
 
 2. Applicability of U.S. Law
 
 26
 "Before dismissing a case for forum non conveniens, a district court must first make a choice of law determination." Zipfel, 832 F.2d at 1482. The Supreme Court, however, has observed that "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." Piper Aircraft, 454 U.S. at 247, 102 S.Ct. at 261. We review the district court's choice of law determination de novo. Pereira v. Utah Transport, Inc., 764 F.2d 686, 689 (9th Cir.1985), cert. dismissed, 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986). In reviewing the factual findings that underlie the choice of law determination, this court must apply the clearly erroneous standard. Villar v. Crowley Maritime Corp., 782 F.2d 1478, 1479-80 (9th Cir.1986).
 
 
 27
 Appellants point out that U.S. law governs this dispute because the bills of lading incorporate U.S. COGSA.[2] They contend that COGSA applies ex proprio vigore because Congress intended for the statute to apply by its own terms to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade...." 46 U.S.C.App. Sec. 1300. Although appellants' assertion is uncontroverted, the district court observed that "COGSA nonetheless does not explicitly require the district court to hear the case" (citing Union Ins. Soc. of Canton, Ltd. v. S.S. Elikon, 642 F.2d 721, 725 (4th Cir.1981)).
 
 
 28
 Because the Ninth Circuit has not directly decided whether a district court may dismiss a COGSA action on the ground of forum non conveniens, we look to other circuits for guidance. In Alcoa, 654 F.2d at 153, the Second Circuit observed that it "consistently has applied the [Gulf Oil ] standard in reviewing dismissals on the ground of forum non conveniens in admiralty cases." Because COGSA is but an island in the ocean of admiralty law, the Gulf Oil analysis ought to apply with equal force in the COGSA context. See Union Insurance, 642 F.2d at 725. Accordingly, appellants' claim that COGSA governs the dispute is by itself insufficient to support their contention that the United States is the only appropriate forum. The Fourth Circuit's holding in Union Insurance is consistent with this conclusion, and there is no law to the contrary. More recently, the Southern District of New York has ruled "that COGSA does not present a bar to the application of forum non conveniens...." Travelers Indem. Co. v. S/S Alca, 710 F.Supp. 497, 500 (S.D.N.Y.), aff'd without opinion, 895 F.2d 1410 (2d Cir.1989). Thus, even assuming the applicability of U.S. law, appellants have no entitlement to have their case heard in a U.S. court.[3]
 
 3. Private Interest Factors
 
 29
 The district court correctly followed the procedure first set forth in Gulf Oil by weighing the private and public interest factors that govern whether a motion to dismiss on the ground of forum non conveniens ought to be granted. Private interest factors include: ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial. Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843.
 
 
 30
 The first private interest factor is the location of evidentiary sources. Appellee's defenses focus on the circumstances surrounding the casualty, an issue with which the appellants are largely disinterested. Evidence that will illuminate the liability issues is largely unavailable in the United States. The vessel's characteristics and preparation, the putative negligence of the seamen, and the care of the damaged cargo are best investigated in the Philippines; moreover, much of this information is accessible in or near Manila.[4] The relevance of this evidence, however, is much more apparent to parties who are not suing upon the bill of lading.
 
 
 31
 The second private interest factor is the availability of witnesses and what compulsory process, if any, may be used to obtain testimony from unwilling witnesses. The key witnesses who are competent to testify concerning the casualty to the ISABELITA are all located in the Philippines. Of these witnesses, however, many are not employed by Moges nor within appellee's control. In fact, many of these witnesses are employed by PTC--a corporation that is now being sued by Moges in the Philippine courts--and presumably are reluctant to testify on appellee's behalf. Because Moges cannot compel these witnesses to appear before U.S. courts, Moges' defense and trial preparation could suffer some impediment if the U.S. courts were to retain control of this litigation.
 
 
 32
 The third private interest factor that touches on this case is the desire for an expeditious trial, a goal that is advanced by appellee's ability to join third party defendants who otherwise would lie beyond the U.S. court's jurisdiction. Although Moges would be able to press a right of indemnification if found liable in a U.S. court, " '[t]he inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction....' " Pain v. United Technologies Corp., 637 F.2d 775, 790 (D.C.Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) (quoting Fitzgerald v. Texaco, Inc., 521 F.2d 448, 453 (2nd Cir.1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976) (emphasis added)).
 
 
 33
 Numerous lawsuits arise from the same casualty, and most are now pending before the Philippine courts. There are significant advantages in having all the parties interested in apportioning a limited source of recovery assert their claims in one forum, not only to avoid inconsistent factual findings, but also to spare the litigants the additional costs of duplicate lawsuits. Only the Philippine court has jurisdiction over all of the related cases. In contrast, if the district court were to retain jurisdiction, Moges would be forced to defend in the United States while simultaneously pressing and defending claims in the Philippines.[5] Given this intricate and dense web of litigation, the relative convenience of the parties is furthered by dismissal.
 
 
 34
 Appellants rely in part on Atalanta Corp. v. Polskie Linie Oceaniczne, 683 F.Supp. 347 (S.D.N.Y.1988), to persuade this court that private interest factors should be weighed in their favor.[6] In Atalanta, the court retained jurisdiction over plaintiffs' claim that the bills of lading contained material misrepresentations. Atalanta, however, may easily be distinguished in that the district court premised its ruling on the finding that plaintiffs' claims hinged on "apparently undisputed facts." Id. at 352.
 
 
 35
 The remainder of appellants' arguments concerning private interest factors are contingent upon a desired ruling that the primary issue in this case concerns Moges' alleged issuance of false bills of lading. Appellants' argument and their failure to plead these claims will be discussed in the context of the second issue.
 
 
 36
 In view of the location of the evidence on liability and apportionment of resources, the inherent difficulty of bringing hostile witnesses before the U.S. courts, and the desire for an expeditious trial, the private interest factors weigh in favor of the appellee.
 
 4. Public Interest Factors
 
 37
 Public interest factors encompass court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar. In evaluating these factors, we must first decide how the underlying issue ought to be conceptualized.
 
 
 38
 Appellants frame the issue in terms of misrepresentation and reliance in an effort to persuade this court that public factors point in favor of retaining jurisdiction. As the Second Circuit observed in Berisford Metals Corp. v. S/S SALVADOR, 779 F.2d 841 (2d Cir.1985), cert. denied, 476 U.S. 1188, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986), there is a profound local interest in maintaining the integrity of bills of lading. "If, instead, the buyer were free to question the accuracy of the bill upon presentation, the entire structure would be weakened as a method of carrying out commercial transactions." Id. at 847. Appellants' position gains additional strength from the apparent legislative intent underlying COGSA that U.S. parties who are victimized by fraudulent bills should be able to press their claims in domestic courts. See Union Insurance, 642 F.2d at 726 (COGSA "appears to suggest a preference for an American forum").
 
 
 39
 Moges, however, suggests that the underlying issues concern the casualty suffered by the ISABELITA. Even the credibility of the bill of lading may depend in part upon "what Moges knew and when it knew it." These questions can be answered at least as expeditiously in the Western Pacific as in the Eastern Pacific. Moges therefore argues that the public interest factors point toward a trial in the Philippines. From this perspective, the cause of the freighter's grounding would be of significant local interest only in the Philippines. The ISABELITA is a Philippine flagged vessel operated solely by Philippine residents who transport cargo between Philippine ports. Furthermore, given that the casualty occurred in Philippine waters, the local courts would likely have a greater understanding of the circumstances surrounding the dispute.
 
 
 40
 With the exception of the appellants, many (if not all) of the parties to this dispute are subject to the jurisdiction of the Philippine courts. Given the common factual predicate that links the many lawsuits that have been filed, efficiency and economy militate in favor of consolidating all claims in one trial. In terms of the applicable law, appellee has introduced evidence that the Philippine courts are competent to apply U.S. COGSA or, in the alternative, to apply a law that is substantially similar. Appellants, on the other hand, have failed to refute the claim that Philippine courts are able to apply U.S. COGSA in an equitable manner.
 
 
 41
 The record shows that appellee has carried the burden of demonstrating the availability of an adequate alternative forum. Moges has also proven that choice of law is not a dispositive consideration in this dispute. Finally, appellee has established that the private and public interests weigh heavily on the side of trial in the foreign forum. For these reasons, we affirm the district court's decision to grant Moges' motion to dismiss on the ground of forum non conveniens.
 
 II. Material Misrepresentation
 
 42
 Appellants contend the bills of lading lead them to believe the cargo was safely loaded on board the WATERPRINT at Davao City, Philippines on July 27, 1988. The cargo never reached Davao City, however, because of the ISABELITA's grounding in early August 1988. Thus, appellants claim the bills of lading contained false information that they relied upon to their detriment. Moges, however, insists its bills of lading were accurate. Appellee asserts the bills indicate the cargo was loaded on board the ISABELITA on July 27, 1988, and Moges further contends the documents make no mention of transshipment having taken place at Davao City from the ISABELITA to the WATERPRINT.
 
 
 43
 In its Memorandum and Order, the district court rejected appellants' misrepresentation argument because "no such claim [was] alleged in the complaint. Nor have plaintiffs made efforts to amend the complaint." Appellants claim this issue was raised implicitly when they sued Moges for non-delivery of the cargo and Moges answered it was not liable by virtue of defenses provided by COGSA. Appellants cite Berisford, 779 F.2d at 848, for the proposition that the issue of misrepresentation in a bill of lading is automatically raised by appellee's election to assert COGSA defenses.
 
 
 44
 The Berisford Court, however, was not asked to rule on the viability of a misrepresentation claim that was not raised by the plaintiffs. The material facts in that case were not in dispute as the defendant conceded misrepresentation; the central issue was whether a carrier that issued an erroneous bill of lading could limit its liability pursuant to an agreement binding the parties to certain COGSA terms. Id. at 845. Accordingly, appellants cannot rely on Berisford to raise a claim they themselves did not. Insofar as appellants maintain that misrepresentation is the principal issue in this dispute, it was incumbent upon them to raise the issue in their initial complaint or, at the latest, in their First Amended Complaint.[7] Appellants, however, failed to present this claim at either opportunity.
 
 III. Leave to Amend
 
 45
 Appellants argue that even if an amended complaint was necessary, they should have been given leave to amend because the proceedings were still in their early stages. Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." This court reviews a district court's denial of a motion for leave to amend under an abuse of discretion standard. Klamath-Lake Pharmaceutical Ass'n. v. Klamath Medical Service Bureau, 701 F.2d 1276, 1292 (9th Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).
 
 
 46
 At the hearing on the motion to dismiss for forum non conveniens, appellants made an oral request to amend their First Amended Complaint to state a cause of action for misrepresentation.[8] Because the district court found appellants' allegations contrary to the evidence and untimely (since they were first being made at the hearing), it denied appellants leave to amend. In reviewing appellants' motion for reconsideration, the district court observed the essence of appellants' request is that the evidence concerning misrepresentation is located in the United States and that trial in the Philippines is therefore unwarranted. Because this argument was rejected in the court's initial Memorandum and Order, granting appellants leave to amend "would not salvage the action, nor would such an amendment change the result of this court's previous order for dismissal on the grounds of forum non conveniens." Order Denying Reconsideration, p. 4 (footnote omitted).
 
 
 47
 Undue delay is a valid reason for denying leave to amend. California Arch. Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Appellants' attempts to recharacterize the primary issue as one of misrepresentation appear to be nothing more than a desperate effort at persuading the lower court to retain jurisdiction. Appellants failed to present this issue in either their initial or first amended complaint. Only after the district court had begun the exhaustive task of balancing the Gulf Oil factors did appellants attempt to introduce their misrepresentation claim. Under these circumstances and given the analysis set forth above, the district court did not abuse its discretion in denying appellants leave to amend their complaint.
 
 
 48
 AFFIRMED.
 
 
 
 [1]
 Cargo buyers unrelated to those in the instant case filed a parallel suit against Moges and others in the U.S. District Court for the Western District of Washington at Seattle, Docket No. C88-1530, alleging loss or damage to the cargo aboard the ISABELITA. Moges moved to dismiss that action on the ground of forum non conveniens, and the District Court dismissed that action. No appeal was filed
 
 
 [2]
 As evidence, they point to Paragraph 2.B. of the Bill of Lading, which states: "If the goods are shipped to or from a port in the United States, this Bill of Lading shall have effect subject to the provisions of the U.S. Carriage of Goods by Sea Act, approved April 16, 1936, which shall be deemed to be incorporated herein."
 
 
 [3]
 The Philippine courts could apply U.S. COGSA if the situation so warrants. Evidence indicates that the Philippine COSGA is substantially similar to U.S. COGSA, which suggests the Philippine courts would be competent to apply U.S. law. Furthermore, as one district court has observed: "With respect to the Carriage of Goods by Sea Act, 46 U.S.C.A. Sec. 1300 et seq., as governing law, there is nothing to indicate that its wide-spread application by foreign courts in marine controversies cannot be matched by the tribunals of a maritime country such as Sweden." Murillo Ltda. v. The Bio Bio, The Paraguay, The Argentina, 127 F.Supp. 13, 16 (S.D.N.Y.), aff'd per curiam, 227 F.2d 519 (2nd Cir.1955). By extension, the same ought to be true of Philippine courts
 
 
 [4]
 While appellants observe that Moges had a general agent in the United States, earned freight in U.S. dollars, and had ships calling at different U.S. ports, none of these contacts relate to the question of why the ISABELITA grounded and what liability, if any, Moges owes appellants. These contacts are relevant only in demonstrating that the district court has personal jurisdiction over Moges in this case, a concession that appellee does not challenge
 
 
 [5]
 A salvage arbitration is proceeding in London but does not appear to affect any claim based upon appellants' bills of lading
 
 
 [6]
 Appellants' efforts to bring Atalanta to the court's attention may be misguided. In Atalanta, the district court found "[n]either plaintiffs' American citizenship, ... nor the fact that evidence of their damages is situated here, is sufficient to overcome the overwhelming public and private inconvenience of proceeding in this forum." Id. at 352 (citation omitted). Moreover, the judge ruled "it is appropriate that the court attach conditions to a forum non conveniens dismissal, specifically that defendants consent to the jurisdiction of the alternative forum and waive their statute of limitations defenses in that forum." Id. In the instant case, the district court not only imposed these conditions, it also further guarded appellants' interests by requiring Moges to execute a letter of guaranty
 
 
 [7]
 Appellants assert that misrepresentation in a bill of lading does not require them to make a separate claim that is beyond the scope of their non-delivery argument. While the litigants agree that the cargo was never delivered to appellants in the United States, the parties dispute the issue of misrepresentation. Appellants, while conflating non-delivery and misrepresentation, observe that "[i]n view of the status of bills of lading as negotiable documents, ... the importance of holding a carrier to the representations made in a bill of lading should be obvious." Insurance Co. of North America v. S/S Globe Nova, 638 F.Supp. 1413, 1419 (S.D.N.Y.1986), rev'd on other grounds, 820 F.2d 546 (2nd Cir.1987), cert. denied, 484 U.S. 965, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987) (citing Berisford, 779 F.2d at 845-48). In ruling for appellee, however, this court does not deny the policy interest in holding a carrier accountable for the issued bill of lading. Rather, we are emphasizing that appellants have an obligation to plead the material elements of their case. We express no opinion on the merits of the bill of lading claim
 
 
 [8]
 Appellants never made a formal motion to amend with a proposed amended complaint. In so noting, the district court commented that since appellants' "effort at testing the waters [in making an oral motion was] unavailing, no useful purpose would be served by a formal motion at this point." Order Denying Reconsideration, p. 4, n. 1