EFCO CORP. f/k/a Economy Forms Corporation, an Iowa Corporation, and Economy Forms, Ltd., Plaintiffs,

v.

ALUMA SYSTEMS USA, INC., Aluma Systems Corp., a subsidiary of Tridel Enterprises, Inc., and Aluma Systems Canada Inc., a subsidiary of Aluma Systems Corp., Defendants.

No. 4–97–CV–90069.

United States District Court,
S.D. Iowa,
Central Division.

Dec. 18, 2000.

David L. Charles, David K. Basler, Belin, Lamson, McCormick, Des Moines, IA, for Plaintiffs.

Hayward L. Draper, Thomas W. Foley, W. Don Brittin, Jr., Norbert Kaut, Nyemaster, Goode, Voigts, West, Hansel & O'Brien, PC, Des Moines, IA for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

This case is before the Court on Defendants' Motion to Dismiss for Forum Non Conveniens. Plaintiffs resisted Defendants' motion and the Court held oral argument on the matter. For the reasons discussed below, the Court will grant Defendants' motion.

### I. Background

Who the parties are in this case is important. The Plaintiffs are EFCO Corp.[1] and Economy Forms, Ltd. EFCO Corp. is an Iowa corporation with its principal place of business in Iowa. It is a wholly owned subsidiary of Wilian Holding Company, which is an Iowa corporation. At the time this lawsuit was filed, Economy Forms, Ltd. was also an Iowa corporation and wholly owned subsidiary of Wilian Holding Company. It considered its principal place of business to be Iowa, although it was the entity through which the EFCO worldwide organization did its Canadian business. Subsequent to the filing of this lawsuit, Economy Forms, Ltd. transferred its assets to a newly formed Nova Scotia company called EFCO Canada Co. in exchange for stock. Economy Forms, Ltd. then contributed the stock of EFCO Canada Co. to EFCO Canada Ltd., an Iowa corporation and wholly owned subsidiary of Wilian Holding Company. Economy

---

1. Formerly known as Economy Forms Corp.

Forms Ltd. transferred the remaining assets it held to EFCO de Chile, S.A. and merged itself out of existence. At times throughout this opinion, Economy Forms, Ltd., EFCO Canada Co. and EFCO Canada Ltd. will be referred to collectively as EFCO Canada and both Plaintiffs will be referred to collectively as EFCO.

The Defendants in this case are Aluma Systems USA, Inc. ("Aluma USA"), Aluma Systems Corp. ("Aluma Systems"), and Aluma Systems Canada Inc ("Aluma Canada"). Aluma USA is a California corporation with its principal place of business in California. It is the entity through which Aluma Systems and Aluma Canada do business in the United States. Aluma Systems is a Canadian corporation with its principal place of business in Toronto. It is a wholly owned subsidiary of Tridel Enterprises Inc., which is a Canadian corporation with its principal place of business in Canada. Aluma Canada is also a Canadian corporation with its principal place of business in Toronto. It is a wholly owned subsidiary of Aluma Systems. At times throughout this opinion, the Defendants will be referred to collectively as Aluma.

EFCO claims, and Aluma does not contest, that EFCO and Aluma are two of the three "significant competitors in the world" for customized-construction-forms business. The forms are used in the construction industry to support and form concrete structures of all types—from tunnels to high-rise buildings. EFCO has offices dispersed over the Americas, as well as Europe and Southeast Asia. EFCO states that it has been in the business for approximately 60 years while Aluma began in 1971. According to EFCO, Aluma did not directly compete with EFCO in the customized forming business until approximately 1992. EFCO states that it developed a significant database of proprietary information that is compiled in the form of a manual and is only distributed to its engineering support personnel. The information is distributed in either hard-copy or software form.

The dispute between these parties arose when EFCO allegedly discovered that Aluma had obtained the EFCO database and used it to submit a bid for the construction of Ravens Stadium in Baltimore, Maryland. Aluma did not get the job. EFCO contends that its former employees gave the database to Aluma's Canadian branch after the former EFCO Canadian branch employees left to work for Aluma Canada. EFCO claims the Canadian branch of Aluma, Aluma Canada, helped prepare the bid on Ravens Stadium.

EFCO brought this lawsuit seeking relief under four counts: (1) violation of the Iowa Uniform Trade Secrets Act; (2) inducement of breach of fiduciary obligation; (3) conversion; and (4) unjust enrichment. Prior to filing this lawsuit, EFCO filed a separate lawsuit in Canada. The Canadian complaint named as defendants Aluma Systems, Aluma Canada, and several individuals; it did not name Aluma USA. The complaint stated a variety of claims that substantially overlapped with the claims asserted in the Complaint filed in this Court: copyright infringement, misappropriation of confidential information and trade secrets, trademark infringement, and breach of fiduciary duties. The complaint requested the full panoply of relief, including preliminary and permanent injunctions.

On June 9, 1997, Aluma filed a Motion to Dismiss or Stay with this Court. Aluma's motion to dismiss was based on lack of personal jurisdiction, and its motion to stay was requested in light of similar proceedings (the Canadian lawsuit). On October 30, 1997, the Court denied Aluma motion to dismiss and granted its motion to stay. Then, on February 26, 1999, EFCO

filed a motion to lift the stay because the Canadian lawsuit was at an impasse.[2] The Court granted EFCO's motion to lift the stay on August 16, 1999. EFCO's Canadian lawsuit was later dismissed without prejudice at EFCO's request.

On August 29, 2000, Aluma filed this Motion to Dismiss for Forum Non Conveniens. Aluma claims that forcing it to defend EFCO's lawsuit in Iowa is inappropriate enough to justify dismissing the lawsuit. Aluma suggests that Canada is the more appropriate forum.

## II. Discussion

■ Whether to dismiss EFCO's lawsuit against Aluma for forum non conveniens is a close question. The Court analyzes the question under the framework outlined by the Supreme Court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):

> If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by

> inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* (footnotes omitted). An adequate alternative forum is, of course, a prerequisite to this analysis. *See id.* ("In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes the criteria for choice between them.").

That Canada provides an adequate alternative forum is not in dispute. Aluma is certainly amenable to service there, it offers a remedy for EFCO's claims, and there is no danger that EFCO would be treated unfairly there. *See id.; De Melo v. Lederle Laboratories*, 801 F.2d 1058,

---

**2.** Apparently, the parties entered into an agreement to stay the Canadian proceedings until an independent expert could review data

collected from Aluma's computer system. However, the parties could not agree on an expert.

1061 (8th Cir.1986) ("Where the alternative forum offers a remedy for the plaintiff's claims, and there is no danger that she will be treated unfairly, the foreign forum is adequate.") (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). The issues that are in dispute are, one, how much weight to give EFCO's choice of forum and, two, whether the balance of the remaining factors outlined in *Gilbert* is sufficient to overcome that choice of forum.

### A. Plaintiffs' Choice of Forum

 Normally, a court is required to give strong deference to the plaintiff's choice of forum. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. 839 (stating that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). The Court may not dismiss a plaintiff's lawsuit simply because another forum is a more convenient forum for the defendant. *See Koster v. (American) Lumbermens Mut. Casualty,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Rather, the Court may only dismiss a plaintiff's suit if its choice of forum is so oppressive and vexatious to the defendant as to be out of all proportion to the plaintiff's own convenience, which may be shown to be slight, or if trial in the chosen forum would be inappropriate because of considerations giving rise to administrative and legal problems for the court. *See id.* Aluma argues, however, that EFCO's choice of forum should not be given the great amount of weight that is normally afforded to a plaintiff's choice of forum.

Aluma argues that EFCO's choice of forum should be given less weight because EFCO Canada, a Canadian corporation, is not only one of the Plaintiffs but is the real party in interest. For this argument Aluma cites *Piper Aircraft v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), which states that "a foreign plaintiff's choice deserves less deference." In that case the plaintiff representative was Scottish, represented only Scottish citizens, and was suing in Pennsylvania where one of the defendants was located. *Id.* at 238, 102 S.Ct. 252. The Court held that the district court was correct in affording the plaintiff's choice of forum less weight in that situation. *Id.* at 256, 102 S.Ct. 252.

As described above, the identity of the parties in this case is complicated. One of the Plaintiffs, EFCO Corp., is clearly an Iowa corporation. The other Plaintiff in this case, Economy Forms, Ltd., is no longer in existence. At the time this suit was filed, Economy Forms, Ltd. was an Iowa corporation. Since then, the assets of Economy Forms, Ltd., presumably including this lawsuit, were transferred to a Canadian company, EFCO Canada Co., in exchange for stock. But, Economy Forms, Ltd. then transferred the stock of EFCO Canada Co. to EFCO Canada Ltd., an Iowa corporation. Thus, to simply call one of the Plaintiffs in this case a Canadian corporation, or an American corporation for that matter, would be a bit of an overstatement.

Moreover, Aluma fails to convince the Court that EFCO Canada is the real party in interest here. The trade secrets that Aluma allegedly stole were developed in Des Moines, Iowa. Further, all the incarnations of EFCO Canada (Economy Forms, Ltd., EFCO Canada Co and EFCO Canada Ltd.) are part of a worldwide organization known as EFCO, the headquarters of which is in Des Moines, Iowa. The Court has already dealt with a similar problem in dealing with the issue of personal jurisdiction in its Memorandum Opinion and Order on Defendants' Motion to Dismiss or Stay. In that opinion this Court found as follows.

It would also be far from "logical" to assume Aluma's actions were aimed at EFCO's Canadian branch. The physical

act of theft is certainly aimed at the place of theft, but the reasonable expectation and understanding in the mind of the thief is that he takes something that belongs to someone else and that the *effect* of his theft will be where that someone is located. In this case, the thing belonged to EFCO and both the person who physically took the information and the company that used it knew who and where EFCO was. EFCO's headquarters and principal place of business, and therefore the Iowa forum, was clearly the focal point of the alleged misappropriation.

*EFCO Corp. v. Aluma Systems USA, Inc.,* 983 F.Supp. 816, 823 (S.D.Iowa 1997) (emphasis in original). Though this analysis took place before EFCO's corporate restructuring, its import is the same. The subject of this lawsuit is stolen trade secrets. The focal point of the alleged misappropriation was in Iowa, and alleged misappropriation was ultimately directed against the entire EFCO enterprise. It could just as easily be said that EFCO Corp. is the real party in interest. The Court therefore holds that the fact that the assets of one of the named Plaintiffs in this lawsuit are now held by a Canadian corporation (which is in turn held by an Iowa corporation) is not enough, by itself, to lessen the weight given to the Plaintiffs' choice of an Iowa forum.

Aluma also argues that EFCO's choice of forum should be given less weight because EFCO is a multinational enterprise doing extensive business in Canada and the injury EFCO alleges in this lawsuit occurred in Canada. In support of this argument Aluma cites *Reid–Walen v. Hansen,* 933 F.2d 1390, 1395 (8th Cir. 1991), which states:

> When an American corporation doing extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's United States citizenship. As the Ninth Circuit recently reiterated:

> > In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

(citing *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.,* 918 F.2d 1446, 1450 (9th Cir.1990) (internal quotations omitted) (citation omitted) (footnote omitted)). While this statement was not a part of the court's holding, the Court finds the reasoning behind it sound.

The court in *Reid–Walen* cites two cases in its discussion of giving less weight to a plaintiff's choice of forum where that plaintiff does extensive business abroad and brings suit in a United States forum for an injury that occurred abroad: one, the Ninth Circuit case that it quotes, *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.,* 918 F.2d 1446, 1450 (9th Cir.1990) (quoting *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir.1977), cert. denied 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978)); the other, an older Eighth Circuit case, *Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 346 (8th Cir.1983) (quoting *Founding Church of Scientology v. Verlag,* 536 F.2d 429, 435 (D.C.Cir.1976)). In *Contact Lumber,* the plaintiffs were United States corporations suing a Philippine corporation over a dispute that arose out of the plaintiff's purchase of lumber from the defendant. 918 F.2d at 1447–48. On appeal, one of the plaintiffs' contentions was that the district court erred in attaching little significance to their choice of forum. *Id.*

at 1449. The Ninth Circuit denied the plaintiffs' contention, making the statement quoted above in *Reid–Walen*. *Id.* at 1450.

The facts in *Lehman* are extremely similar to the facts in *Reid–Walen*. In *Lehman*, the Eighth Circuit noted that " '[t]he doctrine that a United States citizen does not have an absolute right to use United States courts usually is expressed in the context of a citizen doing business abroad, expecting still to use United States courts.' " 713 F.2d at 346 (citations omitted). The court then went on to distinguish that situation from the situation at hand, stating that the plaintiff in the case before it did not do business abroad on a daily business but rather was only vacationing for a few days. *Id.* at 346–47. In *Reid–Walen*, the Eight Circuit again noted that some courts discount the plaintiff's choice of forum when the plaintiff does business abroad and brings suit for an injury that occurred abroad. 933 F.2d at 1395. The court then, as it did in *Lehman*, went on to distinguish the situation before it in that the plaintiff was only vacationing abroad for a few days. *Id.*

The situation before this Court is exactly the one that the Eighth Circuit distinguished from in *Lehman* and *Reid–Walen*. EFCO clearly does extensive business in Canada. In fact, EFCO Canada was located there at the time the trade secrets were allegedly misappropriated. It is also fair to say that EFCO's injury occurred in Canada. Although the Court considers the focal point of the alleged misappropriation to be in Iowa, the physical act of the theft and at least part of the injury is still alleged to have occurred in Canada by former EFCO Canadian employees. The point is that the injury was a direct result of EFCO's business in Canada. Therefore, the Court thinks that the rationale the Eighth Circuit has mentioned but not

applied in previous cases applies in this case.

Discounting the deference due to a plaintiff's choice of forum that does extensive business abroad and brings a suit arising out of an injury that occurred abroad is a logical outgrowth of the Supreme Court's decision in *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In *Piper Aircraft Company*, the Court held as follows:

> In *Koster*, the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

454 U.S. at 266, 102 S.Ct. 269 (citing *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (footnotes omitted)). It makes sense that if a foreign plaintiff's choice of a United States forum should be given less deference, so should a United States plaintiff's choice of a United States forum where that plaintiff is doing extensive business abroad and is suing over an injury that occurred in the course of doing business abroad. In either case, the plaintiff's choice of a United States forum should not be as presumptively convenient as if the plaintiff had no dealings abroad.

The fact that EFCO already sued Aluma in Canada—actually one week before it brought suit against Aluma in the United States—bolsters the reasoning in favor of discounting EFCO's choice of a United States forum. The deference given to a plaintiff's choice of forum is based on a

presumption of convenience. *See Piper Aircraft Co.*, 454 U.S. at 255–56, 102 S.Ct. 252. Although the United States might be the most convenient forum for EFCO, by suing Aluma in Canada first EFCO indicates that Canada would not be completely inconvenient for it. Also, suing Aluma in Canada first and now insisting that the case be tried in the United States after some discovery also suggests the possibility that EFCO's motivation in choosing the United States forum might be partially based on something other than pure convenience concerns. Therefore, the Court will partially discount the deference given to EFCO's choice of forum.

The fact that Aluma did not bring this motion until now, on the other hand, mitigates its claims of inconvenience to some extent. With respect to delay, the Fifth Circuit has held that

> a defendant must assert a motion to dismiss for forum non conveniens within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant. While untimeliness will not effect a waiver, it should weigh heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve.

*In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1165 (5th Cir.1987), vacated on other grounds sub nom. *Pan American World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989) (citations omitted). The Third Circuit has also given weight to similar concerns. *See Lony v. E.I. Du Pont de*

*Nemours & Co.*, 935 F.2d 604, 614 (3d. Cir.1991).

Although Aluma filed its motion a little more than three and a half years after EFCO filed suit against it in the United States, there are good reasons to at least excuse the delay to some extent. First, the case was stayed for about two years and Aluma filed the motion approximately one year after the Court lifted the stay.[3] Second, Aluma claims that several events occurred within the three months preceding its motion that excuse the delay. Among these events are EFCO amending its complaint, EFCO finally confirming contentions filed by Aluma in November, January and April, EFCO confirming that EFCO Canada is now a Canadian corporation, and three out of the four alleged misappropriators becoming no longer employed by Aluma and thus beyond this Courts subpoena power. All this, Aluma claims, made the controversy much more of a Canadian dispute, and thus the motion that much more ripe, than it was originally thought to be. Third, while EFCO points out that extensive discovery has been completed in this case, it does not refute Aluma's contention that the completed discovery could be fully utilized in a Canadian lawsuit. Indeed, it appears that it might very well have been the design of the parties to utilize discovery mechanisms in Canadian and United States forums simultaneously. The Court will thus discount Aluma's claims of inconvenience—but only to a very slight degree.

## B. Private and Public Interest Factors

◼ Having decided to give less weight to EFCO's choice of forum, the Court

---

**3.** EFCO filed its Complaint on January 30, 1997. The Court issued the Memorandum Opinion & Order staying the case on October 30, 1997. The Court issued the Order lifting the stay on August 16, 1999. Aluma filed its Motion to Dismiss for Forum Non Conveniens on August 29, 2000.

turns to the remaining factors relevant to a motion to dismiss for forum non conveniens. These factors are divided into two categories: private interest factors and public interest factors. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839. The Court weighs these factors in order to determine whether the balance is sufficient to overcome Plaintiffs' choice of forum. Obviously, the less weight the Court gives a plaintiff's choice of forum the easier it is for the balance of private and public interest factors to overcome it.

### 1. Private Interest Factors

The following are the private interest factors the Court must consider: (1) the access to sources of proof; (2) the availability of compulsory attendance for unwilling witnesses; (3) the cost of attendance of willing witnesses; (4) the possibility of viewing the premises; (5) difficulties in enforcing a judgment if one is obtained; and (6) all other practical problems. *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. The relative ease of access to sources of proof does not weigh strongly in favor of either forum. Nor is it necessary to view the premises in this case. The other factors, however, weigh in favor of a Canadian forum.

Aluma contends that there are eight unwilling witnesses that are beyond the subpoena power of this Court. Aluma says there are five possible misappropriators as identified by EFCO's pleadings and various discovery. EFCO states that there are only four alleged misappropriators. Regardless, none of them are within the subpoena power of this Court and all but one of them, whose exact whereabouts are unknown, are within the subpoena power of a Canadian court. In addition, Aluma also claims that it has identified four former employees of EFCO Canada that are now outside the subpoena power of this Court and within the subpoena power of a Canadian court.

The attendance of key witnesses is important. "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gilbert*, 330 U.S. at 511, 67 S.Ct. 839; *see also De Melo v. Lederle Laboratories, Div. of American Cyanamid Corp.*, 801 F.2d 1058, 1063 (8th Cir.1986) ("It is of considerable importance ... that litigation in the United States would deprive [the defendant] of compulsory process...."). In *Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 952 (1st Cir. 1991) (Breyer, J.), the court upheld the district court's dismissal of the case in favor of a Canadian forum based in large part on the lack of compulsory process in the United States. The court said that fraud and subjective intent were elements of the plaintiff's claim and made the live testimony of witnesses for the purposes of presenting demeanor evidence "essential to a fair trial." *Id.* While fraud is not one of the claims in this case, EFCO does allege that Aluma violated Iowa's Uniform Trade Secrets Act by misappropriating information via EFCO's former employees and that Aluma induced the alleged misappropriators to breach their fiduciary obligation to EFCO. The testimony of the alleged misappropriators will certainly be vital to these claims. Although the Court might be able to arrange for written or even video depositions of these witnesses in Canada with the help of a Canadian court, the fact remains that this Court is without subpoena power over alleged misappropriators. To make Aluma defend itself without the live testimony of these individuals, or even run the risk that the Court will be unable to arrange for their depositions, strikes the Court as oppressive.

The cost of getting willing witnesses to testify at a trial weighs in favor of trying this case in Canada as well. Employees of EFCO and Aluma will be considered willing witnesses. It is probably too early in the litigation to tell exactly how many witnesses would have to travel from Toronto to Iowa as opposed to traveling from Iowa to Ontario. However, Aluma has no employee witnesses in or near' Iowa, whereas EFCO has employee witnesses in both Iowa and Ontario. Also, Aluma states, and EFCO does not refute, that out of the witnesses that have been deposed, twenty were in Canada and five were in the United States. Aluma says, again without objection from EFCO, that this is consistent with its belief that the fact witnesses at trial will be mostly Canadians.

Forcing Aluma to defend this lawsuit in the United States would also deprive it of the ability to implead third parties. In *Piper Aircraft Company,* the Supreme Court found that forcing the defendants to rely on actions for indemnity or contribution after a verdict against them would have been burdensome; it then held that such a finding is sufficient to support dismissal on grounds of forum non conveniens. 454 U.S. at 259, 102 S.Ct. 252. EFCO named four of the alleged misappropriators in its Canadian suit, but did not name them in its United States suit. All four of those individuals are now beyond the power of this Court. Although Aluma has yet to implead the four individuals named in the Canadian suit and did not assert any third parties claims against the individuals in the Canadian suit, the fact that the situation could become burdensome still weighs against keeping the case here.

Finally, keeping this case in the United States would make enforcing a judgment difficult. EFCO seeks two types of relief in its lawsuit, a money judgment and injunctions. Aluma claims that because the

way its secured debt is structured, a large money judgment could not be enforced without recourse to Canadian courts. Aluma also points out that enforcing an injunction in Canada would prove difficult for this Court. Part of the injunctive relief EFCO requests concerns the conduct of Aluma's engineering group's future design of customized, heavy duty concrete forms which is done primarily by Aluma's Special Projects Group located in Ontario. These problems in enforcing a judgment against Aluma, if one is obtained, weigh in favor of letting a Canadian court handle the case.

### 2. Public Interest Factors

The Court must also consider the following public interest factors: (1) court congestion; (2) the "local interest in having localized controversies decided at home," *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839; (3) the interest in having a case in a forum that is at home with the law that must apply; (4) the avoidance of unnecessary conflict of laws problems; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty," *Piper Aircraft Co.,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (citation omitted). *Gilbert* 330 U.S. at 508, 67 S.Ct. 839; *Piper Aircraft Co.,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (citation omitted). Neither party has alleged that court congestion is an issue. All the other public interest factors either weigh in favor of a Canadian forum or neither forum.

It is difficult to say whether this controversy is local to the United States or to Canada. As discussed in detail above, while the controversy involves one Canadian business allegedly stealing trade secrets from another business located in Canadian via former Canadian employees, the trade secrets were developed in Iowa. A state has a strong interest in protecting intellectual property developed within its

borders. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336 (9th Cir.1984). Thus, the "interest in having localized controversies decided at home," *Gilbert* 330 U.S. at 508, 67 S.Ct. 839, really does not strongly favor one forum over the other.

Likewise, it cannot be said that citizens of either forum would be burdened with an unrelated controversy. The controversy is related to Canada in the sense that it involves two companies located in Canada. And it involves the United States in the sense that it involves trade secrets that were developed in Iowa.

Although it is not accurate to say that this controversy is completely local to either Canada or the United States, it appears that Canadian law will govern. Restatement (Second) of Conflict of Laws § 145, cmt. f, which Iowa has adopted, *see Veasley v. CRST International, Inc.*, 553 N.W.2d 896, 897–898 (Iowa 1996), states as follows: "[T]he principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values." The conduct EFCO complains of occurred in Canada. Therefore, Canadian law will probably apply. While EFCO does not concede the application of Canadian law, it does not dispute it either.

The applicability of Canadian law weighs in favor of a Canadian forum. In *De Melo*, the court held that where Brazilian law was likely to govern there was a strong interest in having the case tried in Brazil. *De Melo v. Lederle Laboratories*, 801 F.2d 1058, 1064 (8th Cir.1986) (citation omitted). Though the applicability of Canadian law by itself is not determinative, *see Reid–Walen v. Hansen*, 933 F.2d 1390, 1401 (8th Cir.1991), especially because there is no language barrier, *see id.*, it is nonetheless significant. Because the applicability of Canadian law appears fairly clear, the avoidance of unnecessary problems in conflicts of laws is not of great moment.

### III. Conclusion

The factors the Court is required to consider clearly favor a Canadian forum. With the deference given to Plaintiffs' choice of forum partially discounted, the balance of these factors is sufficient to convince the Court that the case should be tried in Canada. This is so even though Defendants' claims of inconvenience are slightly mitigated by their delay in bringing the motion. Defendant's Motion to Dismiss for Forum Non Conveniens (Clerk's # 121) is **granted**. However, Plaintiffs' lawsuit. is **dismissed without prejudice** in case re-filing in Canada does not relieve the concerns expressed in this opinion.

**IT IS SO ORDERED.**