RELCO LOCOMOTIVES, INC., Plaintiff,

v.

ALLRAIL, INC., Defendant.

No. 4:13–cv–00394.

United States District Court, S.D. Iowa, Central Division.

Signed March 5, 2014.

Debra Rectenbaugh Pettit, Davis Brown Law Firm, West Des Moines, IA, Deborah M. Tharnish, Davis Brown Law Firm, Des Moines, IA, for Plaintiff.

Stephen M. Judge, Faegre Baker Daniels LLP, South Bend, IN, Jesse Linebaugh, Faegre Baker Daniels, LLP, Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court is AllRail, Inc.'s ("Defendant" or "AllRail") Motion to Dismiss or, in the Alternative, to Stay ("Motion"), filed November 18, 2013. Clerk's No. 7. RELCO Locomotives, Inc. ("Plaintiff" or "RELCO") resisted the Motion on December 5, 2013. Clerk's No. 12. Defendant replied on December 16, 2013 ("Reply"). Clerk's No. 20. The Motion is fully submitted.

## I. FACTUAL BACKGROUND

Defendant is a Quebec corporation providing rail-related services. Decl. of Isaac Haboucha in Supp. of Def.'s Mot. ("Haboucha Decl. I") (Clerk's No. 7–2) ¶ 2. Plaintiff is an Illinois corporation that leases and sells locomotives. Aff. of Douglas Bachman ("Bachman Aff.") (Clerk's No. 12–1) ¶ 3. Plaintiff operates a facility in Albia, Iowa ("Iowa Facility"), where it "rebuilds, remanufactures, and refurbishes" locomotives for its customers. *Id.* ¶¶ 3–4.

In 2010, Defendant agreed to provide locomotives to RioTinto Fer et Titane ("QIT") for use in mining operations. Haboucha Decl. I ¶ 5. Defendant subcontracted with Plaintiff to rebuild two locomotives to QIT's specifications. *Id.* ¶ 6. Between February 2011 and April 2011, the parties negotiated a contract, primarily through email and telephone communications. *Id.* ¶ 7. During their email correspondence, Defendant forwarded to Plaintiff the General Conditions of the agreement between Defendant and QIT, titled "Schedule A". *Id.* ¶ 9. Schedule A's provisions included a "Governing Law" clause designating that the laws of Quebec governed the agreement, and a "Forum" clause designating Quebec as the "non-exclusive jurisdiction of and venue" for resolving disputes under the agreement. Def.'s Ex. C (Clerk's No. 7–4) ¶¶ 25.8, 25.9. When Plaintiff received Schedule A from Defendant, it recommended changes to some of Schedule A's provisions, but did not mention the governing law or forum provisions. *See* Def.'s Ex. D (Clerk's No. 7–5). During the email correspondence regarding Schedule A, Defendant referred to "a back to back on the contract with QIT"; Plaintiff responded by expressing unfamiliarity with the term "back to back." Def.'s Ex. (Clerk's No. 20–3) at 1. Defendant called Plaintiff to explain that "back to back" meant "the terms of the contract between RELCO and AllRail would be the same as the terms of [Schedule A]." Haboucha Decl. I ¶ 8. Also during negotiations, Plaintiff sent an email stating that "FOB is Albia" and that Defendant would take "[possession] of the locomotive at the time of acceptance." Def.'s Ex. D.

The parties' email negotiations culminated in Defendant submitting two purchase orders to Plaintiff, one for each rebuilt locomotive. Bachman Aff. ¶¶ 14, 16.

These purchase orders list Plaintiff's Iowa Facility as the locomotive supplier and specify that the "final agreement from QIT will form an integral part of this PO [purchase order] in regards to all warranties and indemnities." *See* Pl.'s Ex. 1 (Clerk's No. 12–2); Pl.'s Ex. 2 (Clerk's No. 12–3) (collectively "Purchase Orders") (capitalization modified from original). Defendant did not attach Schedule A to either purchase order. Bachman Aff. ¶ 18.

Plaintiff completed the rebuilt locomotives in December 2012, and Defendant inspected them at the Iowa Facility. *Id.* ¶¶ 29–30. Defendant submitted a "Certificate of Acceptance" on December 17, 2012, which stated that the parties "hereby acknowledge and confirm that the following locomotives have been completed per the terms of their agreement and accepted by AllRail." Pl.'s Ex. 3 (Clerk's No. 12–4). Defendant then arranged for a third party to transport the locomotives from the Iowa Facility to Quebec, where they arrived in February 2013. Haboucha Decl. I ¶ 17.

During the course of Plaintiff's work in rebuilding the locomotives, Defendant sent representatives to the Iowa Facility on "many" occasions to check on Plaintiff's progress and to inspect the locomotives. Bachman Aff. ¶ 25. Plaintiff also sent representatives to Canada on two occasions related to its agreement with Defendant. *Id.* ¶¶ 26–27. Since the Defendant's submission of the Certificate of Acceptance, the parties have become involved in a legal dispute pertaining to each party's dissatisfaction with the other's performance of the agreement. *See id.* ¶ 44; Haboucha Decl. I ¶ 22. Plaintiff filed a suit against Defendant in this Court on September 13, 2013 ("Iowa Action"), alleging a breach of contract and promissory estoppel, and seeking compensation for an unpaid installment totaling $298,855.54 that was due upon Defendant's acceptance of the locomotives.

Compl. (Clerk's No. 1) ¶¶ 25–40. Defendant was served with the summons in the Iowa Action on October 7, 2013. Bachman Aff. ¶ 45. Defendant initiated legal proceedings against Plaintiff in Montreal on September 18, 2013 ("Quebec Action"), seeking to compel Plaintiff to repair defects in the locomotives and to recover damages for costs incurred from the repairs Defendant had made to the locomotives. Def.'s Br. in Supp. of Its Mot. ("Def.'s Brief") (Clerk's No. 7–1) at 4. Plaintiff was served with a copy of the Quebec Action on September 19, 2013. Haboucha Decl. I ¶ 22.

## II. STANDARD OF REVIEW

Defendant seeks to dismiss Plaintiff's complaint for lack of personal jurisdiction or, in the alternative, under the doctrine of *forum non conveniens.* Mot. ¶¶ 1–2. Should the Court decline to dismiss Plaintiff's complaint on either of these two grounds, Defendant requests that the Court stay these proceedings under principles of international comity or pursuant to *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("the *Colorado River* doctrine"), pending the outcome of the Quebec Action. *Id.* ¶ 3.

### A. *Personal Jurisdiction*

When a defendant moves to dismiss a lawsuit for a lack of personal jurisdiction, the plaintiff—not the defendant—bears the burden of proof. *Dairy Farmers of Am. v. Bassett & Walker Int'l, Inc.,* No. 5:11–cv–6052, 2012 WL 601232, at *2 (W.D.Mo. Feb. 23, 2012). The plaintiff is entitled to the benefit of all factual disputes. *Id.* To conclude that it has personal jurisdiction over a non-resident defendant, a court must determine both that the requirements of the forum state's long-arm statute are met and that asserting personal jurisdiction over the defendant comports

with due process. *Digi–Tel Holdings, Inc. v. Proteq Telecomm., Ltd.,* 89 F.3d 519, 522 (8th Cir.1996). Asserting personal jurisdiction over a defendant comports with due process if the defendant has purposefully established minimum contacts with the forum state, and if the court's exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 108–09, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations and quotation marks omitted). "[In other words,] it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citations and quotation marks omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts ... or the unilateral activity of another party or a third person ...." *Id.* (internal citations and quotation marks omitted). "[Personal] [j]urisdiction is proper ... [only] where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (internal citations omitted). Physical presence within the forum state is, however, not required. *Id.* at 476, 105 S.Ct. 2174.

■ In addition to these basic due process principles, courts in the Eighth Circuit analyze the following five factors in deciding whether asserting personal jurisdiction over a non-resident defendant violates due process: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of

action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Digi–Tel Holdings, Inc.,* 89 F.3d at 522–23 (internal citations omitted). The first three factors are deemed primary while the last two are considered secondary. *Id.* at 523 (internal citations omitted).

## B. *Forum Non Conveniens*

"The doctrine of *forum non conveniens* allows a court to decline to exercise jurisdiction and dismiss a case where that case would more appropriately be brought in a foreign jurisdiction." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 596 (8th Cir.2011) (internal citations omitted). When assessing a party's motion to dismiss for *forum non conveniens,* a court must first satisfy itself that there is an "adequate alternative forum ... available to hear the case." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1393 n. 2 (8th Cir.1991). An adequate alternative forum is a forum where the parties are "amenable to process and come within the jurisdiction of the forum," and where the parties will not be deprived of possible remedies or treated unfairly. *Id.*

If the court finds an adequate alternative forum, it must then evaluate private and public interest factors as they weigh against or in favor of the alternative forum. *K–V Pharm.,* 648 F.3d at 597. Private interest factors include: (1) the "ease of access to sources of proof"; (2) the availability of compulsory process for unwilling witnesses; (3) the cost of attendance for willing witnesses; (4) the ability to view the premises, if necessary to the action; (5) the enforceability of eventual judgment; and (6) any other practical problems that may interfere with an "easy, expeditious and inexpensive" trial. *Id.* (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055

(1947)). Public interest factors include: (1) "[a]dministrative difficulties" arising when matters are litigated in "congested centers instead of being handled at [their] origin"; (2) the imposition of jury duty on people in communities with no relation to the litigation; (3) where many people are affected by the matter, the inconvenience of holding the trial in a distant area where those affected "can learn of it by report only"; (4) the local interest "in having localized controversies decided at home"; and (5) the appropriateness of "having ... a diversity case in a forum that is at home with the state law that must govern the case." *Id.* (citing *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. 839). Because *forum non conveniens* is "to be applied only in exceptional circumstances," unless the defendant can show that the interests weigh strongly in its favor, "the plaintiff's choice of forum should rarely be disturbed." *Id.* at 597–98, 67 S.Ct. 839. The defendant has the burden of proving all of the elements of *forum non conveniens*. *Id.* at 598, 67 S.Ct. 839.

### C. *Stay and Abstention*

"The federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coop.*, 48 F.3d 294, 297 (8th Cir.1995) (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 817, 96 S.Ct. 1236). However, there are occasionally concerns that permit a court to stay its proceedings in deference to a parallel jurisdiction. One doctrine permits a court "to stay an action based on the pendency of a related proceeding in a foreign jurisdiction," based upon principles of international comity, or deference to the "legislative, executive and judicial actions of foreign nations." *EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F.Supp. 816, 824 (S.D.Iowa 1997) ("*EFCO I*"). Courts make the decision to stay in favor of the

foreign jurisdiction based upon factors such as:

[T]he similarity of parties and issues involved in the foreign litigation; the promotion of judicial efficiency; adequacy of relief available in the alternative forum; issues of fairness to and convenience of the parties, counsel and witnesses; the possibility of prejudice to any of the parties; and the temporal sequence of the filing of the actions.

*Id.* While weighing these factors, the Court must keep in mind that "[f]ederal courts are reluctant to decline jurisdiction solely on the basis of concurrent proceedings in another jurisdiction" and that "[p]arallel proceedings ... should ordinarily be allowed to proceed simultaneously," although neither obligation is absolute. *Id.* (internal citations and quotation marks omitted).

Likewise, under the *Colorado River* doctrine, "a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention." *Fru–Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir.2009). State and federal actions are "parallel" when (1) a "substantial similarity" exists between the parties and issues in the state and federal proceedings, and (2) there is "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *See id.* at 535. Where the two actions are parallel, courts must determine "exceptional circumstances" by evaluating six factors:

(1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which

case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights. *Id.* at 534. The six factors "are not intended to be exhaustive, nor are they mechanically applied," and when examining the factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir.2006) (internal citations omitted).

### III. ANALYSIS

With the preceding legal framework in mind, the Court now turns to Defendant's Motion.

#### A. *Personal Jurisdiction*

Defendant first contends that it lacks the necessary minimum contacts with Iowa for the Court to exercise personal jurisdiction.[1] Defendant "has never done any business in Iowa whatsoever," outside of its contract with Plaintiff in this matter.[2] Def.'s Br. at 8. Plaintiff asserts that Defen-

dant had the following contacts with Iowa: (1) mail and email communication with Plaintiff during contract negotiations and afterwards; (2) Plaintiff's use of the Iowa Facility to rebuild locomotives for Defendant; (3) Defendant's contractual duty to arrange delivery of the repaired locomotives from Iowa to Quebec, with the understanding that "FOB is Albia"; and (4) Defendant's site visits to the Iowa Facility. Defendant claims that these contacts are insufficient for personal jurisdiction.

#### 1. *Threshold disputes.*

As an initial matter, Defendant disputes the first two contacts Plaintiff alleges Defendant had with Iowa. First, Defendant refutes that its email and telephone communications with Plaintiff constitute contacts with Iowa because, although it maintains a facility in Iowa, Plaintiff is, in fact, an Illinois company. *See* Def.'s Reply in Supp. of Its Mot. ("Def.'s Reply") (Clerk's No. 20) at 1. Telephone and email communications are undoubtedly "evidence of a continuous, systematic business relationship," which constitute contacts if directed at the appropriate forum. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65

---

**1.** Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005). Therefore, the Court must only decide whether exercising personal jurisdiction over Defendant in Iowa offends due process.

**2.** Because Plaintiff does not dispute Defendant's contention that it "has never done any business in Iowa" outside of the contract giving rise to this dispute, the Court concludes that it does not have general personal jurisdiction over Defendant. *See Daimler AG v. Bauman*, — U.S. —, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014) ("[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear

any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." (internal citation omitted)). However, a lack of *general* personal jurisdiction does not end the personal jurisdiction analysis; Defendant may alternatively be subject to *specific* personal jurisdiction if the case's underlying issues arise from "single or occasional acts occurring or having their impact within the forum State." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (internal citation and quotation marks omitted). It is under the specific personal jurisdiction rubric that the minimum contacts analysis comes into play in this case.

F.3d 1427, 1433 (8th Cir.1995). However, telephone and "email . . . typically do not reveal anything about the geographic location of the addressee," and require some indication that Defendant knew it was interacting with the forum. *See Shrader v. Biddinger*, 633 F.3d 1235, 1247–48 (10th Cir.2011) ("[I]f the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state."). Plaintiff indicated early in its communication with Defendant that the locomotives would be rebuilt at the Iowa Facility. *See* Def.'s Ex. D (informing Defendant on March 8, 2011, that FOB would be in Albia and that acceptance of the locomotives must occur at the Iowa Facility). Nevertheless, Defendant's understanding that Plaintiff would perform the contract at the Iowa Facility does not transform these communications into contacts with Iowa unless Defendant knew that Plaintiff was communicating from Iowa. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 519 (8th Cir.2010) (recognizing that the defendant's telephone calls to the California branch of an Iowa company did not contribute to its minimum contacts with the Iowa forum). Thus, because Plaintiff made no showing that it communicated with Defendant from within the Iowa forum and that Defendant knew of that fact, the email and telephone communications do not contribute to the minimum contacts analysis.

■ Defendant also characterizes the second contact noted above—Plaintiff's operation at the Iowa Facility—as Plaintiff's "unilateral performance," *see* Def.'s Br. at 7, which, accordingly, "cannot satisfy the requirement of contact with the forum state." *See Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 654 (8th Cir. 1982). The Court disagrees. Concededly,

unilateral activity by a party asserting personal jurisdiction usually does not create a contact between the defendant and the forum because it typically does not contribute to "[t]he critical relationship . . . among the defendant, the forum, and the litigation." *See id.* at 654 (internal citations and quotation marks omitted). Here, however, Plaintiff's performance of the contract in Iowa fits comfortably within the relationship "among the defendant, the forum, and the litigation" because Defendant solicited Plaintiff to rebuild locomotives with the clear understanding that it would do so in Albia, Iowa. *See* Purchase Orders (designating the "Supplier" as Plaintiff's Iowa Facility). Because Defendant contemplated, and in fact contracted for, Plaintiff's performance in Iowa—and, indeed, actually made multiple visits to the Iowa Facility—the Court finds that Plaintiff's performance of the contract in Iowa was not unilateral and constitutes a "contact" for personal jurisdiction analysis.

■ Defendant appropriately cites to cases in this Circuit holding that, individually, none of its contacts are sufficient to establish jurisdiction. *See K–V Pharm.*, 648 F.3d at 593 ("A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction."); *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 520 (8th Cir.2010) ("[W]e [have] stated that the delivery term in a contract could not create sufficient contacts to uphold jurisdiction."); *Mountaire Feeds*, 677 F.2d at 655–56 ("It may have been reasonably foreseeable that [the plaintiff] would have [performed contractual duties in the forum state]. . . . However foreseeability (of an impact within the forum state) alone has never been a sufficient benchmark for personal jurisdiction." (internal quotation marks omitted)). Personal jurisdiction, however, does not hinge on each contact

individually but, instead, on the totality of all contacts. *See Burger King Corp.,* 471 U.S. at 479, 105 S.Ct. 2174 (stating that all factors—including contract negotiations, contract terms, and the parties' course of dealing—contribute to the minimum contacts evaluation). Accordingly, the Court now turns to a collective analysis of all of Defendant's contacts with Iowa to determine personal jurisdiction.

### 2. *Minimum contacts analysis.*

 Most importantly to the minimum contacts analysis in this case, Defendant visited the Iowa Facility on multiple occasions in relation to its agreement with Plaintiff. *See id.* ¶ 25. Normally, an "isolated" trip to the forum, which was unrelated to the litigation, does not, by itself, weigh heavily on minimum contacts. *See Pangaea, Inc. v. Flying Burrito LLC,* 647 F.3d 741, 747 (8th Cir.2011) (affirming dismissal for lack of personal jurisdiction where the defendant's only contact with the forum was a single trip to the forum that was not related to the plaintiff's claim). However, where, as here, physical presence in the forum arises out of an agreement between the parties, and that agreement is the source of the dispute, incidents of physical presence in the forum are "purposeful activity" and are "sufficiently substantial to meet the requirements of due process," even without additional contacts. *See Papachristou v. Turbines, Inc.,* 902 F.2d 685, 686 (8th Cir. 1990) (reversing dismissal for lack of personal jurisdiction where the defendant

came to the forum to deliver an item that it had agreed to acquire for the plaintiff).

Even beyond the significance the Court places on Defendant's physical presence in Iowa, however, the parties also maintained a two-year relationship, spanning the negotiation and performance of the contract, and Defendant issued two of the three payments contemplated by the Purchase Orders, which listed only the Iowa Facility as the locomotive supplier. *See* Bachman Aff. ¶¶ 26, 31 (describing Plaintiff's first interactions with Defendant in December 2010, and Defendant's final transport of the locomotives from the Iowa Facility on December 17, 2012); *id.* ¶¶ 23–24, 35–36 (outlining the two payments that Defendant made on each purchase order). Defendant also fulfilled the contract's delivery terms by coordinating the transportation of the locomotives from Iowa to Quebec pursuant to the "FOB is Albia" specification Plaintiff sent in an email. Haboucha Decl. I ¶ 17. In *K–V Pharmaceutical,* similar FOB delivery terms that went unfulfilled reflected an "agree[ment] to engage in substantial activity" in the forum state.[3] 648 F.3d at 594. Here, Defendant not only agreed to the contemplated delivery terms, thereby agreeing to engage in substantial activity in Iowa, but it also *executed* those delivery terms. Following the rationale in *K–V Pharmaceutical,* then, by actually executing the agreed-upon delivery terms, Defendant actually engaged in "substantial activity" in Iowa. Further, Defendant made a substantial monetary investment

---

**3.** *K–V Pharmaceutical* held that minimum contact analysis must consider a contract's "future consequences in deciding whether personal jurisdiction over an out-of-state defendant exists," even if those consequences never materialized. 648 F.3d at 594. After noting that the contract between the plaintiff and the defendant provided for the product at issue to be shipped "f.o.b. [the plaintiff's] fa-

cility, St. Louis, Missouri" and that title to the product would have passed to the plaintiff upon its delivery by the defendant, the court found that these unfulfilled contract terms comprised "even more extensive contacts" than the other contacts in the case, and "tip[ped] the scales in favor of" personal jurisdiction. *Id.* at 594–95.

in the services Plaintiff provided in Iowa.[4] Considering these contacts in their totality, the Court finds that the first two factors in the minimum contacts analysis—considering the nature, quality, and quantity of contacts—favor personal jurisdiction in Iowa.

■■■ The third factor requires the assessment of the relationship between the cause of action and Defendant's contacts with Iowa. Plaintiff's cause of action is breach of contract. *See* Compl. ¶ 1. Plaintiff grounds the action in its allegation that, while at the Iowa Facility, Defendant inspected and accepted the locomotives, thus entitling Plaintiff to the remaining ten percent due under the Purchase Orders. *See id.* ¶¶ 29, 32. Because Plaintiff's action revolves around Defendant's acceptance of the locomotives, which allegedly occurred during Defendant's visit to Iowa,[5] the Court finds a distinct relationship between the cause of action and Defendant's contacts with Iowa, per the third factor in the analysis.

■■■ The remaining two factors to consider—the forum state's interest in providing a forum and the convenience to the parties—are secondary to the three factors considered above. *See Digi–Tel Holdings,* 89 F.3d at 523. Despite their lesser weight, the Court notes both that "[the forum state] has an obvious interest in providing a local forum in which its residents may litigate claims against non-residents," *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1389 (8th Cir.1995),

and that any convenience to one party in this case will serve to inconvenience the other, *see Viracon, Inc. v. J & L Curtain Wall LLC,* 929 F.Supp.2d 878, 885 (D.Minn.2013) (noting that the party-convenience factor generally weighs equally on both parties because "litigating here would be more convenient for [Plaintiff], while litigating in [Quebec] would be more convenient for [Defendant]"). As such, Iowa's interest in providing a forum weighs in favor of jurisdiction, because even though Plaintiff is an Illinois company, it operates a permanent facility in Iowa and employs Iowa residents, *see* Bachman Aff. ¶ 51, and the convenience to the parties factor is in equipoise.

In conclusion, after carefully examining all five factors required of the minimum contacts analysis, the Court finds that four weigh firmly in favor of its exercise of personal jurisdiction over Defendant in this case. Accordingly, the Court turns now to Defendant's alternative requests.

### B. *Forum Non Conveniens*

Defendant next urges the Court to exercise its discretion to dismiss the case in favor of the Quebec forum through the doctrine of *forum non conveniens. See* Def.'s Br. at 9. Defendant argues that Quebec is an adequate alternative forum and that the necessary private and public interest factors favor Quebec as the forum for this dispute. *See id.* at 11–14. To support its *forum non conveniens* claim, Defendant relies heavily on the forum clause in Schedule A. *See id.*

---

4. Defendant agreed to pay over $2 million to Plaintiff for the rebuilt locomotives, *see* Purchase Orders (reflecting the combined price of the two locomotives as $2,016,690.00 USD), and it has paid $1,739,770.71 of the promised amount. *See* Bachman Aff. ¶ 43 (claiming Defendant still owes $276,919.29 of the $2,016,690.00 total).

5. Defendant does not dispute that it visited the Iowa Facility at the time Plaintiff alleges it accepted the locomotives; it simply disputes Plaintiff's claim that it in fact accepted the locomotives. *See* Haboucha Decl. ¶¶ 16, 21.

The Supreme Court recently issued an opinion defining how forum clauses factor into *forum non conveniens* analysis. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.,* —— U.S. ——, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013). Because Defendant implicates a forum clause, the Court first addresses whether that opinion applies to this case. In *Atlantic Marine,* the Court held that a "valid forum-selection clause requires district courts to adjust their usual *[forum non conveniens]* analysis." *Id.* at 581 (internal citations and quotation marks omitted).[6] Because forum-selection clauses "represent[ ] the parties' agreement as to the most proper forum," such clauses have controlling weight in determining the proper forum, and the plaintiff assumes the burden of resisting transfer to the forum designated in the clause. *See id.* at 581–82. Although the Supreme Court did not distinguish between different kinds of forum-selection clauses, the Eighth Circuit recognizes both mandatory and permissive forum-selection clauses. *See Dunne v. Libbra,* 330 F.3d 1062, 1063 (8th Cir.2003). "Mandatory forum-selection clauses require a case to be brought in an identified venue based on specific language indicating the parties' intent to make jurisdiction exclusive." *High Plains Const., Inc. v. Gay,* 831 F.Supp.2d 1089, 1102 (S.D.Iowa 2011) (internal citations and quotation marks omitted). "Permissive forum-selection clauses, on the other hand, constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." *Id.* Because *Atlantic Marine*'s discussion of forum-selection clauses describes those where "a plaintiff agrees by contract to bring suit *only* in a specified forum," the Court finds that the opinion contemplated only mandatory forum-selection clauses when assessing their effect on *forum non conveniens* analysis. *See Atl. Marine,* 134 S.Ct. at 582 (emphasis added).

With this interpretation of *Atlantic Marine* established, the Court notes that the forum clause at issue in this case provides that "[e]ach Party irrevocably and unconditionally submits to the *non-exclusive* jurisdiction of [Quebec]" and "waives any right it has to object to an action being brought in such courts." Def.'s Ex. C ¶ 25.9 (emphasis added). The "non-exclusive jurisdiction" language and waiver of the right to object—as opposed to a waiver of the right to bring suit elsewhere—lead the Court to conclude that the forum clause is permissive, and not mandatory. Assuming without deciding that Plaintiff accepted Schedule A and all of its terms as comprising part of the contract in this case, Plaintiff, in doing so, merely consented to any suit that Defendant may have chosen to bring in Quebec; Plaintiff did not, however, agree to bring suit *exclusively* in Quebec. Thus, the Court proceeds with traditional *forum non conveniens* analysis, and not the modified *Atlantic Marine* analysis.

*1. Adequate alternative forum.*

As a threshold matter for arguing *forum non conveniens,* Defendant asserts that Quebec is an adequate alternative forum. Plaintiff disagrees, on the premise that for a forum to be an adequate alternative, the parties must be "amenable

---

**6.** The *Atlantic Marine* decision applied the forum-selection clause analysis to the 28 U.S.C. § 1404(a) (2006 ed., Supp. V) change of venue statute, but the Court explicitly stated that § 1404(a) "is merely a codification of the doctrine of *forum non conveniens*" and that "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Atl. Marine,* 134 S.Ct. at 580.

to process and come within the jurisdiction of the forum." *See* Pl.'s Br. at 18 (citing *Reid–Walen,* 933 F.2d at 1393 n. 2). Plaintiff claims that, because it did not accept Schedule A or its forum clause designating Quebec as the "nonexclusive jurisdiction" for contractual disputes, it does not come within Quebec's jurisdiction. *See id.* at 18–20. However, the adequate alternative forum requirement "[g]enerally" considers nothing more than whether the *defendant* is "amenable to process" in the alternative forum. *See Pro Edge, L.P. v. Gue,* 374 F.Supp.2d 711, 755 (N.D.Iowa 2005) (citing *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. 839). The rationale for this permissive interpretation of the requirement is simple: the doctrine of *forum non conveniens* has traditionally given the defendant a very limited opportunity to assert a choice between two forums that both have jurisdiction over it. *See Gilbert,* 330 U.S. at 506–07, 67 S.Ct. 839. Accordingly, regardless of whether Plaintiff accepted the forum clause, Quebec is an available alternative forum because Plaintiff does not dispute that Quebec has jurisdiction over Defendant. *See* Def.'s Br. at 11.[7]

### 2. *Balance of factors.*

■ In its brief, Defendant addresses the following issues implicating the private interest categories relevant to *forum non conveniens:* (1) the ability to inspect the locomotives that are central to the dispute; (2) the availability of witnesses for both parties to testify regarding the acceptance, or lack thereof, of the locomotives; and (3) the jurisdiction in which a judgment would need to be enforced. *Id.* at 11–12. Defendant emphasizes the fact that the locomotives are currently located in Quebec, and implies that witnesses testifying to the locomotives' condition must travel there to inspect them. *Id.* However, this characterization overlooks that the central dispute in this case is whether Defendant accepted the locomotives following the inspections Defendant conducted in Iowa. Because Defendant's final inspection of the locomotives at the Iowa Facility comprises the primary source of proof regarding its acceptance of the locomotives, and because documentation and testimony of witnesses—all of whom either reside in Iowa or previously traveled to Iowa to conduct the inspections—may sufficiently shed light on those inspections, the fact that the locomotives are currently in Quebec does not weigh heavily into the Court's analysis. Further, the relative cost and inconvenience of witness attendance does not favor Defendant because the cost and inconvenience of securing the attendance of Canadian witnesses in Iowa is matched by the cost and inconvenience of securing the attendance of Iowan witnesses in Quebec. The Court does, however, take notice that any judgment reached in this forum will have to be enforced in Canada and that, if any Canadian vendors (for either Plaintiff or Defendant) relevant to the case refuse to testify, the parties could not compel their attendance.[8] These factors weigh in

---

**7.** The adequate alternative forum analysis in *forum non conveniens* requires consideration of both the alternative court's availability and its adequacy. *See Reid–Walen,* 933 F.2d at 1393 n. 2. However, Plaintiff does not dispute Quebec's adequacy. *See* Pl.'s Br. at 18. Therefore, the Court has decided only the availability of the Quebec forum.

**8.** While litigating in Iowa interferes with the parties' ability to compel unwilling Canadian witnesses, it is axiomatic that litigating in Quebec would similarly interfere with the parties' ability to compel unwilling Iowa witnesses. *See, e.g.,* 23 Am.Jur.2d *Depositions and Discovery* § 17 (2009) ("A letter rogatory is the medium by which one country, speaking through its courts, requests another country, acting through its own courts and by the methods of court procedure peculiar thereto, to assist the administration of justice in the former country."); *In re Letter Rogatory From*

favor of the Quebec forum, but are insufficient to control the analysis on their own. *See, e.g., Lehman,* 713 F.2d at 342–43 (finding that witnesses outside of a court's compulsory process power do not alone comprise "an exceptional circumstance which would justify the denial of the plaintiff's choice of a local forum").

■ The relevant issues implicating the public interest concerns include: (1) which forum has a greater local interest in the controversy; and (2) the applicable law. Although Defendant asserts that this present controversy is "local" to Quebec, due to the relevance to this case of contractual obligations between Defendant and another Quebec company (QIT), and because the locomotives at issue will be used in Quebec, the Court finds Iowa's local interest to be stronger. Despite being an Illinois company, Plaintiff is registered to do business in Iowa and operates its locomotive facility in Iowa. *See* Pl.'s Br. at 22. This fact alone represents an equally strong local interest on Iowa's behalf. *See Lehman,* 713 F.2d at 344 (finding Iowa had an "equally strong local interest in the dispute," even where the underlying events occurred in the suggested alternative forum, because "Iowa and the United States have an interest in seeing that the plaintiff is provided a convenient local forum, especially when the only alternative forum available to the plaintiff is outside the United States"). In light of *Lehman*'s strong language, combined with the fact that the underlying events (Defendant's satisfactory inspection and acceptance of the locomotives) also occurred in Iowa, the Court finds that Iowa has a stronger localized interest.

The applicable law concern depends on whether the governing law provision in Schedule A controls the dispute. The parties disagree on whether Schedule A, and specifically its governing law provisions, is a part of the contract between Plaintiff and Defendant in this case. Even if the Court assumes, however, that Quebec law applies to this dispute and acknowledges that this would weigh significantly in favor of resolving the dispute in Quebec, *see EFCO Corp. v. Aluma Sys. USA, Inc.,* 145 F.Supp.2d 1040, 1050 (S.D.Iowa 2000) ("*EFCO II* ") (noting that controlling law is "not determinative" but "is nonetheless significant"), *aff'd,* 268 F.3d 601 (8th Cir. 2001), the Court nonetheless concludes that the balance of both private and public interest factors do not weigh strongly enough in Defendant's favor to present the "exceptional circumstances" necessary to disturb Plaintiff's forum choice. *See K–V Pharm.,* 648 F.3d at 597–98.

Defendant has shown that Plaintiff's need to enforce a judgment in Canada, the inability to compel potentially unwilling witnesses to testify, and the arguably valid governing law clause in Schedule A weigh in favor of the Quebec forum. However, the fact that relevant inspections took place in Iowa, the proximity of Plaintiff's witnesses to the forum, Iowa's interest in providing a forum for Plaintiff and, perhaps most importantly, the occurrence of the underlying events within the state, all weigh in favor of the Iowa forum. As such, after carefully weighing the relevant factors, the Court declines to dismiss this

*First Court of First Instance in Civil Matters, Caracas, Venezuela,* 42 F.3d 308, 310 (5th Cir.1995) ("Letters rogatory are governed by 28 U.S.C. § 1782," which was most recently amended in 1964 to broaden its language. "The clear purpose of these amendments was to facilitate American cooperation in foreign litigation matters."); *but see also Lehman v. Humphrey Cayman, Ltd.,* 713 F.2d 339, 342–43 (8th Cir.1983) (noting that compulsory process issues are less significant where many of the foreign witnesses are employed by one of the parties).

case under the doctrine of *forum non conveniens*.[9]

### C. Stay and Abstention

Finally, Defendant requests that the Court stay the present proceeding in favor of the litigation that it has initiated in Quebec. Mot. ¶ 3. Defendant bases its request on principles of international comity and the *Colorado River* abstention doctrine. *Id.*

### 1. International comity.

 Defendant premises its international comity argument on this Court's opinion in *EFCO I*. In *EFCO I*, the Court granted the defendant's motion to stay proceedings while a concurrent proceeding between the parties was pending in Canada. *EFCO I*, 983 F.Supp. at 824–25. Employing the *EFCO I* framework, however, the Court notes key differences between the facts in this case and those in *EFCO I*. In *EFCO I*, the Canadian suit was filed prior to the Iowa suit, satisfying the "temporal sequence" factor outlined by the Court. In this case, however, Plaintiff filed the Iowa Action five days before Defendant filed the Quebec Action, negating that factor. And, perhaps more notably, in *EFCO I*, it was the plaintiff that filed both the Iowa and Canadian actions, creating no fairness issue when the court stayed the Iowa proceedings (initiated by the plaintiff) in favor of the Canadian proceedings (also initiated by the plaintiff). Here, Defendant filed the Quebec Action and did so days after Plaintiff filed the Iowa Action. The Court finds that, even though both actions involve similar parties and the Canadian action will not presumably prejudice Plaintiff, and even though staying this action will increase judicial efficiency, permitting one party's later-filed action to take precedence over the other party's earlier-filed action would severely undermine Plaintiff's right to choose its forum and would unfairly penalize the party that filed its action first (while correspondingly rewarding the party filing later).[10] Ac-

---

9. The Court's conclusion against dismissal for *forum non conveniens* is not altered by the Eighth Circuit's decision in *De Melo v. Lederle Laboratories,* 801 F.2d 1058 (8th Cir.1986), which found that an application of foreign law from a civil law jurisdiction "in light of the other public factors ... strongly supports dismissal." 801 F.2d at 1064. In *De Melo,* the relevant events—the plaintiff's use of medication resulting in her injury—occurred in Brazil, which affected the court's assessment of other *forum non conveniens* factors. *See id.* at 1062–63 (discussing private factors related to the events occurring in Brazil). Indeed, the Court has found no cases affirming dismissal of a suit for *forum non conveniens* where, as here, the underlying events occurred within the plaintiff's desired forum. *See, e.g., id.* (affirming dismissal where underlying events occurred in Brazil); *EFCO Corp. v. Aluma Sys. USA, Inc.,* 268 F.3d 601, 603 (8th Cir.2001) (affirming dismissal where the district court found that the underlying events implicated only the Canadian branches of companies headquartered within the United States); *Mizokami Bros. of Ariz., Inc. v. Mo-*

*bay Chem. Corp.,* 660 F.2d 712, 718–19 (8th Cir.1981) (affirming conditional dismissal where "most of the relevant events occurred in Mexico").

10. The Court notes that, in this case, there was only a five-day delay between Plaintiff's filing of the Iowa Action and Defendant's filing of the Quebec Action, and that Defendant, in fact, filed its action before it was served with process for Plaintiff's action. *See* Haboucha Decl. I ¶¶ 22–23. However, the case from which *EFCO I* borrowed its motion to stay considerations held that "[d]eference to the suit first *filed* is particularly appropriate where, as here, the plaintiff itself commenced the original suit." *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.,* 770 F.Supp. 880, 885 (S.D.N.Y.1991) (emphasis added). The Court finds this model of deference persuasive, particularly where, as here, there is no evidence that Plaintiff "raced to the courthouse" with knowledge that a suit from Defendant was imminent. *See, e.g., Nw. Airlines, Inc. v. Am. Airlines, Inc.,* 989 F.2d 1002, 1007 (8th Cir. 1993) (holding that absent bad faith or a

cordingly, the Court concludes that the factors do not sufficiently weigh in Defendant's favor to warrant a stay under the international comity principles outlined in *EFCO I.*

### 2. *Colorado River doctrine.*

■ Defendant finally argues that the Court should stay its proceedings in favor of the Quebec Action based on the *Colorado River* doctrine. Plaintiff's Resistance refutes the applicability of *Colorado River* to this case because Eighth Circuit case law has required the existence of parallel federal and *state* proceedings when applying the doctrine. *See* Pl.'s Br. at 24. Plaintiff argues that, because the present dispute involves federal and *foreign* proceedings, the *Colorado River* doctrine is inapposite as a threshold matter. *See id.* at 25. The Court agrees.

■ The *Colorado River* doctrine, and the other federal abstention doctrines established by the United States Supreme Court, are premised on federalism concerns. *See Mo. ex rel. Nixon v. Prudential Health Care Plan, Inc.,* 259 F.3d 949, 952–53 (8th Cir.2001) (stating that "[c]oncerns of federalism and efficiency undergird the few limitations" on a court's duty to exercise jurisdiction, in reference to abstention doctrines). Where international comity concerns arise, however, "*Colorado River* and its progeny may be instructive" in the motion-to-stay analysis applied above, but "the considerations involved in deferring to state court proceedings are different from those involved in deferring to foreign proceedings." *Evergreen Marine Corp. v. Welgrow Intern. Inc.,* 954 F.Supp. 101, 104 n. 1 (S.D.N.Y.1997). Because the considerations relevant to deference to foreign proceedings have been out-

lined above, the Court finds the *Colorado River* doctrine inapplicable to this case.

## IV. CONCLUSION

After careful consideration of the issues presented in Defendant's Motion, the Court concludes as follows: (1) Plaintiff has asserted sufficient contacts between Defendant and the Iowa forum to support personal jurisdiction in this Court; (2) the balance of private and public interest factors do not weigh sufficiently in favor of Defendant to support dismissal on the grounds of *forum non conveniens;* (3) principles of international comity do not compel staying the Iowa Action in favor of the Quebec Action; and (4) the *Colorado River* doctrine is inapplicable to this dispute because it does not govern concurrent federal and foreign proceedings. Accordingly, Defendant's Motion to Dismiss or, in the Alternative, to Stay (Clerk's No. 7) is DENIED.

IT IS SO ORDERED.

"race to the courthouse," the first-filed action preempts a later-filed action).